UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ERIN S. LEMKE,

    *Plaintiff*,

v.

BARCLAYS BANK DELAWARE,

    *Defendant*.
_____/

CASE NO. 1:14-CV-14449

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO DISMISS
(Doc. 4)

I. Recommendation

Plaintiff Erin S. Lemke, appearing *pro se*, has brought suit against Defendant Barclays Bank under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and perhaps also the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* The FDCPA allegations do not state a claim because Barclays is not a "debt collector." The potential FCRA allegations do not state a claim because there is no private cause of action for such claims. I therefore recommend GRANTING Defendant's motion to dismiss (Doc. 4).

II. Background and Arguments

Plaintiff filed her case in state court on October 17, 2014. (Doc. 1 at Pg ID 5.) Using a court form, she listed the reasons for her claim: "asked for verification of

1

debt pursuant to Fair Debt Collection Practices Act 15 USC 1692g Sec 809(b), and asked to have the defendant inform the Credit Bureaus that this debt was in dispute, and asked to have the defendant only communicate per mail and not to call." (*Id.*) She attached a two-page explanation along with various exhibits. The statement's chronology unfolds in a haphazard manner, which the Court mirrors to capture the gist of her contentions. On September 14, 2014, she received her credit report, which listed a debt from Barclays.[1] (*Id.* at Pg ID 7.) The debt, $21,610 in total, came from a "Flexible Spending Credit Card" account opened on November 26, 2008. (*Id.* at Pg Id 12.) The current scheduled payments of $216 were due each month, though she had paid at least $300 for each month recorded in the report. (*Id.* at Pg Id 12-14.) The payment history stretches from October 2012 to August 2014; for each month with available data—only one month is missing—Plaintiff paid more than the scheduled amount due. (*Id.*)

Plaintiff claims that "[t]o ensure that these accounts were valid and therefore were in fact debts legally owed," she sent a "validation letter" to Barclays on July 31, 2014. (*Id.* at Pg Id 7.) However, the letter was sent before she obtained the credit report. Nonetheless, she states that "[i]n this validation letter, the account information from the credit report was made clear to [Barclays] and requests were made to ensure that [Barclays] was in fact the holder of the original note referenced by the credit report account." (*Id.*) A review of the letter, attached to the complaint, reveals the source of Plaintiff's confusion in this case.

---

[1] The complaint sometimes refers to Barclays as "Card Services," but as Defendant explains, Barclays is the proper title. (Doc. 4 at Pg ID 40.)

2

The letter was constructed from a mélange of boilerplate paragraphs floating around the Internet.[2] It informs Barclays that, under the FDCPA, Plaintiff is disputing the debt and demands that Barclays validate it by providing various documents, including the original signed contract. (*Id.* at Pg Id at 16.) She also demands Barclays "to stipulate whether you are the holder in due course for my promissory note. If you are not the holder, then you admit to being the servicer of this obligation." (*Id.* at Pg Id 17.) Additionally, Uniform Commercial Code § 3-301 allowed her to demand "presentation of the negotiable instrument. That demand is hereby ordered" and Barclays was to present for her "visual inspection MY ORIGINAL WET INK SIGNATURE PROMISSORY NOTE and allonge together with the ORIGINAL WET INK Deed of Trust." (*Id.*)

Only these documents could "establish [Barclay's] right of enforcement as Holder in Due Course via a chain of assignment . . . ." (*Id.*) Merely claiming to be a "'holder in due course' . . . is insufficient proof of status . . . ." (*Id.*) Even photocopies would not satisfy her; only the original documents could prove to her that the person she had been paying for years was entitled to those payments. (*Id.*) And the consequence of failing to produce these documents was draconian: Barclays could no longer enforce the claim. (*Id.*) As discussed below, these statements misinterpret Plaintiff's relationship with Barclays.

---

[2] *See, e.g.*, *Foreclosure Process*, FreeRepublic.com, (May 16, 2013), http://www.freerepublic.com/focus/bloggers/3020137/posts; Letter from Joe Claypool to J.P. Morgan Chase & Co., on Verification of Debt, (May 16, 2011), http://docslide.net/documents/demand-for-disclosure-of-standing-may-11-2011.html; Scribd, *1st letter sample, demand for PROOF OF CLAIM*, (Jan. 20, 2011), https://www.scribd.com/doc/47277915/1st-letter-sample-demand-for-PROOF-OF-CLAIM.

3

Barclays responded on August 7, 2014, though Plaintiff is uncertain whether this was a proper response because Barclays refused to answer her questions. (*Id.* at Pg Id 7.) The response told Plaintiff that her "attempt to recondition or void your obligation to pay back the balance on your credit card account is unfounded." (*Id.* at Pg ID 20.) Plaintiff took this to mean that Barclays violated the Uniform Commercial Code, so "the debt is no longer owed if in fact it ever was." (*Id.* at Pg ID 7.) She therefore opined that not only did she get out of the debt, but Barclays actually owed her money for violating the FDCPA by refusing to validate her debt. (*Id.*)

Feeling generous, however, Plaintiff gave Barclays a "second chance to validate the debt," and sent it another letter on September 8. (*Id.* at Pg Id 8.) Again, she referenced the listing on her credit report and notified Barclays "pursuant to the [FDCPA], 15 USC 1692g Sec. 809(b), that your claim is disputed . . . [and] that you were required to provide validation . . . ." (*Id.* at Pg Id 24.) Because she had disputed the debt, the FDCPA required Barclays to "cease collection activity until [it] . . . produced validation of the alleged debt . . . . As per the Federal Trade Commission, this includes reporting to the credit bureaus, which Collector [Barclays] obviously has done illegally." (*Id.*) If Barclays had "reported invalidated information" to a credit reporting agency, "this action may constitute fraud under both Federal and State Laws." (*Id.*) She therefore believed that Barclays's actions violated at least two provisions of the FDCPA: one limiting a debt collector's

4

communications with the consumer, 15 U.S.C. § 1692c, and another that allows the consumer to dispute the debt and ask for verification, *Id.* § 1692g.

The consequences were again severe: Barclay's "failure to respond, on a point by point basis, in writing, hand signed, and in a timely manner, has worked as a waiver to any and all of [its] claims in this matter . . . ." (*Id.* at Pg Id 25.) Further, its silence on these critical points entitled Plaintiff to conclude that Barclays had admitted it was a servicer of the promissory note, that the loan had been securitized, that Barclays was not the real party of interest, and that it was a "debt collector rather than the original creditor." (*Id.* at Pg Id 27.) Plaintiff threatened legal action against the "Collector" and also the "Collector's client if it is a different party than yourself since they are liable and responsible for Collector's actions." (*Id.* at Pg Id 26.) Finally, she ordered them not to call by telephone, as she would consider that harassment. (*Id.* at Pg Id 27.) Barclays responded the next week, telling Plaintiff that it "received your request to no longer contact you regarding your Upromise Mastercard." (*Id.* at Pg Id 28.) Consequently, the account was "updated to reflect" the request and closed "immediately." (*Id.*) Plaintiff interprets this as a second violation of the FDCPA. (*Id.* at Pg Id 7.) After she received this response, she pulled her credit report, discussed above, and found the debt remained on it.

The complaint then explains some of Plaintiff's legal reasoning. (*Id.* at Pg Id 8.) Barclays "as a claimed debtor, must be the holder in due course of the note they claim to be owed." (*Id.*) Clearly, Plaintiff meant to say Barclays was the "claimed

5

*creditor.*" As such, Barclays had to produce evidence of the promissory note generating the debt. (*Id.*) Its failure to do so absolved Plaintiff of her obligations: "In short, no notes means no debt," Plaintiff concluded. (*Id.*) Anticipating Defendant's argument, she then added, "Lest there be any confusion on whether the FDCPA applies to [Barclays] as a debt collector," the Consumer Finance Protection ("CFPB") Bureau has defined creditors as "'service providers,'" and because Barclays is "claiming to be in service of this debt," it "is a debt collector as defined by the CFPB and therefore the FDCPA." (*Id.*) Ending, she asks the Court to impose fines:

> Though this is a David and Goliath scenario as ERIN LEMKE, lowly David, seeks to remove this account from [her] credit report and [Barclays], the Goliath of mythic proportions with unlimited financial and legal resources which seeks to continue its fraudulent collection of this invalidated debt; it is through the mercy of the court following the laws that David casts the stone that will vanquish the giant [Barclays] and release ERIN LEMKE from these years of suffering inflicted illegally by [Barclays]."

(*Id.*)

Defendant removed the case to this District (*Id.* at Pg ID 1-2), and filed the present motion to dismiss on November 26, 2014. (Doc. 4.) It argues that Barclays is not a "debt collector" under the FDCPA, and thus not subject to the FDCPA. (*Id.* at 12-14.) Even if the FDCPA applied, Barclays's continues, Plaintiff has not stated a claim. (*Id.* at 14-17.) Specifically, Plaintiff relies on 15 U.S.C. § 1692g, which prescribes certain periods for communications between the debt collector and the consumer. "Within five days after the initial communication with a consumer in connection with the collection of any debt," the debt collector must send a written notice containing various information. 15 U.S.C. § 1692g(a). The consumer has

6

thirty days to dispute that debt and require the debt collector to send "verification of the debt . . . ." *Id.* § 1692g(b). Collection efforts must cease during this period. *Id.* Here, Defendant contends that Plaintiff has failed to give any indication that her letters met these timing requirements; that is, that the letters came within thirty days of some communication from Defendant containing the § 1692g(a) information. Accordingly, Defendant was not obligated to respond at all, whether it was a "debt collector" or not. (Doc. 4 at 15-16.) Finally, Defendants discern that Plaintiff's only possible FCRA claim would come under 15 U.S.C. § 1681s-2, which does not provide a private cause of action.

Plaintiff has not responded to Defendant's motion, even with her deadline extended until January 12, 2015. (Doc. 6.) District Judge Thomas L. Ludington has referred the motion to the undersigned for Report and Recommendation. (Doc. 5.) With briefing concluded, the case is ready for Report.

III. <u>Analysis</u>

    A. <u>Motion to Dismiss Standards</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and will be granted if the plaintiffs have failed "to state a claim upon which relief can be granted . . . ." "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). But the plaintiff must plead "enough facts to state a claim to relief that is plausible

on its face," otherwise the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. (citations omitted). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action . . . ." *Id.* When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Because the dismissal standard scrutinizes the pleadings, the Federal Rules limit courts' consideration of extraneous materials at this stage. Rule 12(d) provides the operative language: "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The "pleadings" the rule refers to are seven narrow classes of documents defined in Rule 7(a), among which is the complaint. Rule 10(c) states that a written instrument attached to a pleading as exhibits "is a part of the pleading for all purposes." Thus, the Court here can consider the exhibits to Plaintiff's complaint.

### B. Plaintiff Fails to State a Claim

Plaintiff's core claim appears to be that Defendant did not properly validate the debt under 15 U.S.C. § 1692g. (Doc. 1 at Pg ID 5.) That is the only claim listed

in her state-form complaint. She covers a lot of ground getting there, however, referencing the Uniform Commercial Code and credit reporting requirements. (*Id.*at Pg ID 7, 17, 27.) Out of an abundance of caution, the Court addresses these issues as well.

Plaintiff gives two grounds to justify her request that Barclays produce proof of the debt. The more obscure basis is Uniform Commercial Code § 3-3501, which Michigan has codified at Michigan Compiled Laws § 440.3501. Plaintiff claims that Barclays failed to "make presentment of the indenture instrument," thereby violating this provision. (Doc. 1 at Pg Id 7.) She is mistaken. Presentment is the right of the person holding an instrument to demand payment. Mich. Comp. L. § 440.3501(1). Barclays would not "make presentment" by buckling to her demand for proof, but rather by seeking payment on the negotiable instrument. However, this section does allow the person obligated to pay the right to demand that the holder exhibit the instrument, identify himself, and "sign a receipt on the instrument . . . ." *Id.* § 440.3501(2)(b).

But Plaintiff fails to plead any proper claim under this provision. First, she does not indicate that Barclays ever made presentment of an instrument obliging her to pay and triggering her right to make a demand. More importantly, she never alleges that any negotiable instrument exists. A negotiable instrument "means an unconditional promise or order to pay a fixed amount of money" if certain other conditions apply. Mich. Comp. L. § 440.3104. *See also* James J. White & Robert S. Summers, *Uniform Commercial Code* §§ 14-1, 15-4 (6th ed., abrg. 2010). A credit

card agreement, which is the only agreement mentioned here, is not equivalent to a negotiable instrument, such as a promissory note. *Smith v. Palasades, LLC*, No. 1:07 CV 176, 2007 WL 1039198, at *6 (N.D. Ohio Apr. 3, 2007). As one court explained, the credit card relationship "is an offer by the issuer for a series of unilateral contracts which are actually formed when the holder uses the credit card to buy goods or services or to obtain cash." *Id.* (citing *In re Ward*, 857 F.2d 1082, 1086-87 (6th Cir. 1988)). This form of agreement does not meet the conditions giving rise to a negotiable instrument. *Id.* Plaintiff has thus failed to show she had the right to demand the information under Michigan's commercial law.[3]

The second basis she cites for her request to Barclays, and for her legal claims against it, is the FDCPA, specifically 15 U.S.C. § 1692g. Here, too, the complaint lacks any proper claim. Plaintiffs bear the burden of establishing that Defendant is a "debt collector." *Golliday v. Chase Home Fin., LLC*, 761 F. Supp. 2d 629, 635 (W.D. Mich. 2011) (adopting Report and Recommendation). Section 1692g only applies to "debt collectors," defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The definition explicitly excludes "any person" who collects a debt "owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person . . . ." *Id.* §

---

[3] The analysis leaves aside whether, if she did have such a right, it sufficiently would trigger the FDCPA or any other federal issue.

1692a(6)(F). An original creditor seeking to collect from its debtor becomes a "debt collector" only when it "uses any name other than [its] own which would indicate that a third person is collecting or attempting to collect such debts." *Id.* § 1692a(6).

Under these provisions, courts routinely find that "a creditor is not a debt collector under the FDCPA . . . [n]or is the assignee of a debt that was not in default at the time it was assigned." *Joyner v. MERS*, 451 F. App'x 505, 507 (6th Cir. 2011) (citations omitted). *See also Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 794 (W.D. Ky. 2003) ("[T]he case law is well-settled on this point: a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts."). Many courts have likewise found that the Defendant here, Barclays, is not a "debt collector" when it acts as a creditor. *See, e.g.*, *Ausar-El v. Barclay Bank Delaware*, No. PJM 12-0082, 2012 WL 3137151, at *2 (D. Md. July 31, 2012) ("[I]t is uncontroverted that Barclays is a creditor seeking to collect debts . . . hence [it] is not subject to the FDCPA."); *Plumb v. Barclays Bank Delaware*, No. CV-11-3090, 2012 WL 2046506, at *4 (E.D. Wash. June 5, 2012) (dismissing FDCPA case against Barclays where the plaintiff acknowledged it was a creditor and alleged no "facts that indicate that Barclays fits the definition of 'debt collector'").

Plaintiff has not pleaded any facts suggesting Defendant is a "debt collector." The credit report she attached to the complaint shows that Defendant provided Plaintiff a credit card; Defendant was not trying to get her to pay some other entity. In fact, nothing from the complaint indicates any debt collection activities occurred.

11

Apparently, Plaintiff punctiliously paid the credit card debt, then for some reason sent the letter disputing that debt. She never alleges that Defendant hounded her for payment. Instead, the complaint announces that Barclays is a "debt collector" because of a recent CFPB bulletin. (Doc. 1 at Pg ID 8, 30-32.) That bulletin deals with representations creditors and collectors make "about the impact that payments on debts in collection may have on credit reports and credit scores." Consumer Fin. Protection Bur., CFPB Bulletin 2013-08, *Representations Regarding Effect of Debt Payments on Credit Reports and Scores* at *1 (July 10, 2013), *available at* http://www.consumerfinance.gov/guidance/ (located under "More Guidance Documents" heading). The discussion falls under different sections of the FDCPA. *Id.* (citing 15 U.S.C. § 1692e). It never suggests that the CFPB is overturning statutory and case law to the contrary. Plaintiff misapprehends the bulletin, conflating its treatment of other statutes with its statements on the FDCPA. She thus develops unsupported legal conclusions.[4]

---

[4] If Barclays is a "debt collector," Plaintiff's complaint would likely still fail: she does not claim or show that her letter, purporting to be a validation request under 15 U.S.C. § 1692g, came within the required time period. That section gives a consumer thirty days to dispute the debts, beginning on his receipt of the collector's "[n]otice of debt" communication. 15 U.S.C. § 1692g(b). Plaintiff has not alleged that she sent either of her letters within the thirty day period. Courts dismiss claims where the complaint demonstrates that the plaintiff did not properly respond within the period. *See Carlisle v. Portfolio Recovery Assocs., Inc.*, No. 1:13-CV-209, 2014 WL 4829023, at *4 (E.D. Tenn. Sept. 29, 2014) ("Plaintiff has pleaded no facts establishing that he sent a written dispute of the debt within 30 days of the initial communication."); *Pakhutko v. Blitt & Gaines, P.C.*, No. 13 C 8317, 2014 WL 1745421, at *1 (N.D. Ill. May 1, 2014) (dismissing case where complaint showed Plaintiff mailed his response after thirty days). Arguably, the complaint here does not display the same failure; it merely fails to affirmatively claim the letters were sent in the thirty-day period. The Court is hesitant to recommend dismissal of a *pro se* complaint for failure to plead compliance with a technical requirement where, unlike the cases above, the complaint does not establish noncompliance.

Finally, the FCRA claim the complaint hints at would fall under 15 U.S.C. § 1681s-2. Among other things, this section prohibits a "person" from furnishing "information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate," or if the consumer has correctly notified the "person" that the information is inaccurate. *Id.* § 1681s-2(a). Reasonable cause to believe" is defined as "having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information." *Id.* § 1681s-2(a)(1)(D). Presumably, Plaintiff's letters would have put Barclays on notice. But Plaintiff's complaint does not properly indicate the information is inaccurate; the only basis she provides for its inaccuracy is that she no longer owes the debt because Barclays failed to validate it. (Doc. 1 at Pg ID 7-8.) But that assertion was mistaken, as shown above. In any case, Plaintiff does not have a private cause of action to enforce this statutory duty. 15 U.S.C. § 1681s-2(d); *see also Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 842 (E.D. Mich. 2010); *Ruggiero v. Kavlich*, 411 F. Supp. 2d 734, 736-37 (N.D. Ohio 2005).

## IV. Conclusion

For the above reasons, I suggest that the Complaint should be dismissed because Defendant is not a "debt collector" and the potentially relevant FCRA section does not provide a private cause of action.

## V. Review

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140, 155; Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. Willis v. Sec'y of Health & Human Servs., 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

14

No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 31, 2015                         S/ PATRICIA T. MORRIS
                                              Patricia T. Morris
                                              United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class mail to Erin S. Lemke at 4407 Congress Drive, Midland, MI 48642.

Date: March 31, 2015                          By s/Kristen Krawczyk
                                              Case Manager to Magistrate Judge Morris